# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**RAINTREE VILLAGE CONDOMINIUM
NO. 11 ASSOCIATION, INC.,**

      **Plaintiff,**

**v.**                                       **Case No.  8:13-cv-656-T-30AEP**

**GREAT AMERICAN INSURANCE
COMPANY OF NEW YORK,**

      **Defendant.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 16), Plaintiff's Response in Opposition (Dkt. 27), Defendant's Reply (Dkt. 34), Defendant's Motion to Strike the Affidavit of Ray Sasovetz (Dkt. 29), Defendant's Motion to Strike the Affidavit of Roy Kerns (Dkt. 30), and Plaintiff's Responses in Opposition to Defendant's Motions to Strike (Dkts. 35 & 36).  The Court, having reviewed the motions, reply, responses, record evidence, and being otherwise advised in the premises, concludes that Defendant's motions should be denied.

## BACKGROUND

In this insurance case, Plaintiff Raintree Village Condominium No. 11 Association, Inc. brings a breach of contract claim against Defendant Great American Insurance Company of New York based on Great American's refusal to pay Raintree's insurance claim related to damage to the subject property caused by fungus, rot, decay, and termites.

Raintree is a condominium association that owns a condominium in Temple Terrace, Hillsborough County, Florida.  Great American issued two all risk property and casualty policies in favor of Raintree: policy MAC 294-83-36-01, for the period 9/28/09 to 9/28/10 and policy MAC 294-83-36-02, for the period 9/28/10 to 9/28/11.

In late September 2010, Raintree discovered rot and termite damage to the 6003 building in the Raintree Village Condominium Complex (hereinafter referred to as the "6003 building"). The 6003 building is a two-story wood frame condominium, consisting of sixteen units. Raintree retained Roy Kerns, a structural engineer and president of Kerns-Whitehouse & Associates, Inc., a structural engineering firm, to conduct an inspection of the damage. According to Kerns' Affidavit and Condition Assessment Report, the wood framing that was rot and termite damaged was "caved in".  "In particular, there had been a progressive failure which led to structural depression and undermining, which constitute[d] a caving in." "Furthermore, portions of the damaged framing had fallen down, meaning that portions had fallen to a lower position than originally located." (Dkt. 25).

On or about April 11, 2011, Raintree made an insurance claim with Great American for the damage to the 6003 building.  Raintree sought coverage for the damage under the "collapse" provisions of the subject policies.  Specifically, the policies provide coverage for "loss" to the covered property from a "Covered Cause of Loss." A "Covered Cause of Loss means Direct Physical 'loss' to Covered Property caused by 'collapse,' except as listed in the exclusions."  Collapse is defined as follows:

> "Collapse" means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.
>
> A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse. A part of the building that is standing is not considered to be in a state of collapse, even if it has separated from another part of the building, and/or it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(Dkts. 8-1 & 8-2).

Great America subsequently investigated the claim. Great American retained Randall Howard, an engineer at SKII Global, to inspect the 6003 building. According to Howard's August 30, 2011 report:

> SKII understands that the [Great American] policy in effect at the Raintree Village 11 Condominiums complex defines collapse to mean "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose." It is SDII's professional opinion that the observed damage to Building 6003 at the Raintree Village 11 Condominiums is not in a state of collapse as defined by the insurance policy or generally accepted engineering concepts and principles.

(Affidavit of Randall Howard, P.E.).

Great American ultimately disclaimed coverage based, in large part, on Howard's report that the damage did not meet the definition of collapse under the subject policies. (Dkt. 17-7). The subject policies provided limited coverage for damage related to fungus, wet rot, and dry rot, subject to a $15,000 policy limit. Accordingly, Great American issued a check for $15,000 to Raintree for damages to the 6003 building solely resulting from fungus, wet rot, and dry rot that occurred during the time that the first policy was in effect.

Great American argues that it does not owe any further payments to Raintree because the 6003 building did not experience collapse as defined under the subject policies. Great American now moves for summary judgment on Raintree's breach of contract claim. Great American also moves to strike two affidavits relied upon by Raintree in its response to Great American's summary judgment motion. The Court will first address the motions to strike.

## DISCUSSION

### I.      Great American's Motions to Strike

#### A.      Standard of Review

Although summary judgment may be granted only if the record reflects that no genuine issue of material fact exists, (*see Tippens v. Celotex Corp.,* 805 F.2d 949, 952 (11th Cir. 1986) and Fed. R. Civ. P. 56), parties may attempt to escape summary judgment by using affidavits to create issues of fact where none exist. Under such circumstances, a court may disregard an affidavit as a "sham" if the affidavit *flatly contradicts* earlier deposition testimony in a manner that cannot be explained. *See Van T. Junkins and Assoc. v. U.S. Indus.,* 736 F.2d 656, 657 (11th Cir. 1984). Under this approach, "[w]hen a party has given clear answers to *unambiguous* questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.*

Thus, an affidavit is properly considered a sham if "the affiant (1) makes a conclusory, unexplained assertion regarding a material fact which (2) directly contradicts that person's unequivocal deposition testimony." *Tippens*, 815 F.2d at 68 (Hill, J., dissenting). Even so,

the Court should only disregard affidavits in limited circumstances: "[e]very discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence." *Tippens,* 805 F.2d at 954 (internal quotation marks omitted). Care must be taken to distinguish "between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Id.* at 953. "In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an early deposition." *Id.*

### B.     The Affidavit of Ray Sasovetz

Great American argues that the affidavit of Ray Sasovetz is a sham.  Sasovetz is the president of Raintree.  During Great American's investigation of Raintree's claim, Sasovetz was examined under oath.  Great American argues that Sasovetz's affidavit is a sham with respect to the following issues: whether Raintree received a copy of the policies and whether the subject units continued to be occupied during the repair of the 6003 building.  Raintree argues in opposition that Sasovetz's affidavit is not inconsistent with his examination under oath and either expands on issues that were discussed, or covers issues that were not discussed at all.  The Court agrees.

Upon review of the entirety of Sasovetz's examination and his affidavit, the Court concludes that Sasovetz's affidavit is not directly inconsistent with his examination under oath.  And, to the extent that there are any inconsistencies, Sasovetz's subsequent affidavit explains them.  Regarding whether Great American ever delivered the subject policies to Raintree, Sasovetz was not questioned about this issue at all during his examination.  Thus,

his affidavit does not contradict any prior testimony on this issue.  Great American argues, however, that the statement that the policies were not delivered is untrue and inconsistent with Raintree's conduct in this case.  These arguments do not provide a basis for striking the affidavit; in other words, Great American may disagree with Sasovetz's statement, but that does not mean that Sasovetz's statement is a sham.  To the contrary, the parties' contrary positions on the issue of delivery amounts to a classic material disputed fact.

As to the portions of Sasovetz's affidavit discussing the occupancy of the 6003 building, Sasovetz's affidavit (Dkt. 26) and subsequent affidavit (Dkt. 35) explain that the questions about occupancy during his examination under oath were ambiguous because they were unclear about the specific period of time.  Sasovetz's affidavit states that he understood the question "at the examination to be whether the units could be occupied at the time that the question was asked, which was after the repairs had been made, and I did not in any way intend to assert that the units had been occupied *at all times*."  (Dkt. 26) (emphasis in the original).  Sasovetz's subsequent affidavit also explains that he was confused about whether the question was asking whether the units had to be vacated during the entire repair process, as opposed to whether there was intermittent vacating of the units as the project progressed.

The Court agrees that the questioning during the examination under oath regarding occupancy could be misconstrued.  Also, even if the Court characterized Sasovetz's affidavit on the issue of occupancy as being contradictory of his examination under oath, Sasovetz presents reasonable explanations of the contradiction.  Simply put, the majority of the alleged discrepancies in Sasovetz's affidavit turn on his credibility, rather than on whether the

affidavit is a transparent sham.   And the Court cannot decide issues of credibility. Accordingly, Great American's motion to strike Sasovetz's affidavit must be denied.

### C.     The Affidavit of Roy Kerns

Curiously, Great American also argues that the Court should strike the affidavit of Roy Kerns, Raintree's engineer.  As discussed above, Kerns conducted an inspection of the damage to the 6003 building and issued a Condition Assessment Report.  Great American argues that Kerns' affidavit is unnecessary because Sasovetz discussed the damage to the 6003 building during his examination under oath.  Great American argues that "[t]he jury does not need an engineering expert witness to tell them whether the building (or a part of the building) abruptly fell down or caved in."  This argument is without merit.  Whether the affidavit is useful to the jury is not an appropriate basis to strike the affidavit at the summary judgment stage.

It is axiomatic that in an insurance coverage dispute, the plaintiff may rely on an engineer's report about the extent of the damage to the subject property.  Indeed, Great American relied upon its retained engineer's report to deny Raintree's claim because the report concluded that "the observed damage to Building 6003 at the Raintree Village 11 Condominiums is not in a state of collapse as defined by the insurance policy".   (Affidavit of Randall Howard, P.E.).  Also, during Sasovetz's examination, he repeatedly stated that he was not a construction person and had no special construction knowledge.  Thus, one could argue that his testimony on the issue of whether the subject property suffered a covered loss would not be useful to a jury.  In other words, Kerns' affidavit and attached Condition

Assessment Report is highly relevant to the salient issue of whether the 6003 building suffered "collapse" as defined under the subject policies. Accordingly, Great American's motion to strike Kerns' affidavit must be denied.

## II. Great American's Motion for Summary Judgment

### A. Standard of Review

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that

there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.  The evidence must be significantly probative to support the claims. *Anderson*,  477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990).  "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).  A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990).   However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

### B.      Florida Statute § 627.421(1)

Raintree argues that Great American is not entitled to summary judgment because Great American never delivered the subject insurance policies to Raintree in compliance with Florida law.  Florida Statute § 627.421(1) provides that: "Subject to the insurer's requirement as to payment of premium, every policy shall be mailed or delivered to the insured or to the person entitled thereto not later than 60 days after the effectuation of coverage."  Sasovetz's affidavit states that the two subject policies were never delivered to Raintree.  As discussed above, Great American disagrees with Sasovetz's affidavit to the extent that he claims that Great American did not deliver the subject policies to Raintree.  However, Great American does not offer any proof of delivery of the policies.

The cases that have applied section 627.421(1) hold that an insurance company cannot furnish a document to the insured indicating coverage and then rely on an exclusion, or an amended definition, that was never provided to the insured to deny coverage. It is important to emphasize that, in these cases, the insured received an initial document indicating coverage for the claim. *See, e.g., Palma Vista v. Nationwide*, 2010 WL 4274747, at *4 (M.D. Fla. Oct. 7, 2010) (noting: "[A]n insurer cannot furnish an insured with documents indicating that coverage exists under the policy, then rely on an exclusion set forth only in documents never actually delivered to the insured to deny coverage.") (citing *ZC Ins. Co. v. Brooks,* 847 So. 2d 547, 551 (Fla. 4th DCA 2003)).

In *Palma Vista*, the insured claimed that the insurance company never delivered the *collapse endorsements* to the 2003 through 2006 policies that the insurance company relied upon to deny coverage. *See id.* The court concluded that the insurance company was not entitled to summary judgment because the insured provided evidence that the endorsements were never delivered. *See id.* The court noted that there would be coverage for the claim if the endorsements did not apply. *See id.*

In *ZC Ins. Co.*, the court concluded that the insurance company did not comply with section 627.421(1) because it never provided the insured with any information on the exclusion at issue. *See* 847 So. 2d at 550. The court held that, because of the failure to deliver the exclusion at issue, the insurance company could not rely on that exclusion to deny coverage even though the claim at issue otherwise would have been defeated by the exclusion if it had applied. *See id.* at 551. Notably, an important consideration in the court's

analysis was the fact that the insurance company had given documents to the insured that indicated that there was coverage.  *See id.*  The court held that providing the insured with documents that defined the coverage without also defining the applicable exclusions was tantamount to fraud by omission.  *See id; see also T.H.E. Ins. Co. v. Dollar Rent-A-Car Systems, Inc.*, 900 So. 2d 694, 696 (Fla. 5th DCA 2005) (noting that "[p]rejudice to the insured should be considered when imposing any sanction for failure to deliver a policy of insurance as required by section 627.421").

Here, Raintree contends that it was not provided with anything related to the subject policies.  Raintree does not explain how this failure prejudiced it.  Indeed, Raintree clearly obtained a copy of the insurance policies at some point because it cites to the policy language in its Civil Remedy Notice of Insurer Violations.  *See* Dkt. 8-3.  It appears that Raintree is taking the position that if an insured is not provided with a copy of anything related to the contract of insurance, the insurance company is responsible for all possible claims, even claims that would clearly not be covered under the contract.  The Court cannot locate any case applying section 627.421(1) that broadly.  And such an application would not make sense.

For example, flood insurance is not covered under most homeowner insurance policies; an insured must obtain a separate flood policy.  If an insured obtained homeowner insurance, but never received a copy of the policy, or any other document, can that insured claim that the insurance company is responsible to pay for damages related to a flood experienced at the subject property even though it is widely known that flood insurance must

be obtained through a separate flood policy?  An even more extreme example is an insured who intentionally assaults a neighbor on the insured's property.  Is the insurance company responsible for the claim because the insured contends that the insurance company never delivered the insurance policy to the insured and the insurance company cannot present proof of delivery of said policy?  The Court thinks not.

Nonetheless, the Court need not address Raintree's argument any further because there is a factual dispute with respect to whether there is collapse coverage that precludes summary judgment.

### C.      Coverage for Collapse

The record establishes the quintessential "battle of the experts" with respect to whether the damage to the 6003 building constitutes "collapse", a covered loss under the subject polices.  Great American's expert concluded that the damage is not indicative of an "abrupt falling down or caving in"; Raintree's expert concluded that the building experienced caving in and observed that parts of the structure had fallen down, i.e., collapsed.  Moreover, Sasovetz's affidavit states that the 6003 building was not occupied at all times during the repair process.

Great American argues that Kerns' affidavit is insufficient to establish a disputed fact because Kerns concluded that "there had been a progressive failure which led to structural depression and undermining, which constitutes a caving in."  (Dkt. 25).  Great American contends that a "progressive failure" cannot amount to an "abrupt" falling or caving in as defined in the policies.  Great American relies on one paragraph in Kerns' affidavit to argue

the absence of a material disputed fact. The Court cannot interpret the facts in Great American's favor. Kerns' affidavit and Condition Assessment Report are sufficient to establish a dispute about whether the damage constitutes collapse under the policies. This dispute is for a jury trial. Accordingly, Great American is not entitled to summary judgment on the issue of collapse coverage.

### D.    Rot Coverage under the Second Policy

There are also material disputed facts with respect to whether Raintree is entitled to an additional payment of $15,000 under the second policy for additional rot damage. Raintree presented evidence that the 6003 building experienced rot damage during the second policy period. Great American may quibble with this evidence, but the Court must examine the evidence in a light most favorable to Raintree, the non-movant, and draw all justifiable inferences in Raintree's favor. Accordingly, Great American is not entitled to summary judgment on the issue of whether Raintree is entitled to coverage for rot damage that occurred during the time that the second policy was in effect.

It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion to Strike the Affidavit of Ray Sasovetz (Dkt. 29), Defendant's Motion to Strike the Affidavit of Roy Kerns (Dkt. 30), and Defendant's Motion for Summary Judgment (Dkt. 16) are DENIED.

**DONE** and **ORDERED** in Tampa, Florida on September 20, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record
S:\Even\2013\13-cv-656.msj.frm